IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **DELBRA L. DEAN**, | |
| Plaintiff, | |
| v. | Civil Action No. 1:14-cv-3775-CAP |
| **1715 NORTHSIDE DRIVE, INC. et al.**, | |
| Defendants. | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In accordance with Fed. R. Civ. P. 56 and LR 56.1(B) NDGa, Plaintiff Delbra Dean submits her Response to Defendants' Motion for Summary Judgment, showing the Court as follows:

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

This is a wage an hour case. Plaintiff is a former exotic dancer who alleged that her former employers, Defendants 1715 Northside Drive, Inc., A-1 Entertainment, LLC, and Carmen Popovitch failed to pay her minimum wages as required under the FLSA. Defendants have moved for summary judgment as to five issues:

1. Whether Plaintiff Dean's claim under 26 U.S.C. 7434 for willful filing of fraudulent tax information returns should be dismissed because she cannot prove fraudulent intent;

2. Whether Dean's FLSA claims should be dismissed based on successor liability;

1

3. Whether Dean's FLSA claims against 1715 should be dismissed based on the affirmative defense of good faith;

4. Whether Dean's FLSA claims against Popovitch should be dismissed because Popovitch is not an "employer" within the meaning of the FLSA; and

5. Whether Defendants are entitled to summary judgment on their contract or unjust enrichment counterclaims.

Defendants' arguments each fail for a host of reasons. First, and most importantly, Defendants have failed to comply with LR 56.1 by failing to support many of their factual contentions with specific (relevant) references to admissible evidence, by stating legal conclusions rather than undisputed facts, and by offering numerous citations to evidence that simply do not support their purported facts. Defendants routinely ignore evidence that directly undercuts their factual contentions and legal arguments. Finally, Defendants fail on numerous occasions to adequately address all issues relevant to the claims they seek summary judgment on. For all of these reasons, their arguments fail as a matter of law.

## II.   STATEMENT OF FACTS

Plaintiff incorporates herein her Response to Defendants' Statement of Material Facts and her Statement of Additional Material Facts, which are filed herewith.

### III.   ARGUMENT

#### A.   Summary Judgment Standard

The facts put forth by a non-movant are entitled to considerable deference in reviewing a motion for summary judgment. All reasonable factual inferences must be drawn in the non-moving party's favor.[1] Summary judgment is appropriate only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[2]

With respect to those issues as to which Defendants have failed to affirmatively show that there is no disputed issue of fact, Plaintiff has no obligation.[3] "[T]he party seeking summary judgment bears the exacting burden of demonstrating that there is no actual dispute as to any material fact in the case"; "the party opposing a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly carried its burden."[4]

Pursuant to the Local Rules of this Court, a movant for summary judgment must include a separate statement of material facts not in dispute.[5] The Court will not consider any fact that the movant (1) does not support by a citation to evidence

---

[1] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *McCormick v. City of Fort Lauderdale*, 333 F. 3d 1234, 1243 (11th Cir. 2003).
[2] Fed. R. Civ. P. 56 (c); see also, *Celotex v. Catrett*, 477 U.S. 317, 322 (1986).
[3] *Clark v. Coats & Clark*, 929 F.2d 604 (11th Cir. 1991).
[4] *Impossible Elecs. Techniques, Inc. v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982).
[5] LR 56.1(B)(1) (N.D. Ga.).

(include page or paragraph number), (2) states as a legal conclusion, or (3) sets out only in the brief.[6]

### B. Disputed Material Facts Exist as to Whether Defendants Willfully Filed Fraudulent Tax Information Returns

With respect to Dean's 29 U.S.C. § 7434 claim, Defendants argue that she "has no evidence to offer of Defendants' intent to defraud the IRS."[7] This is a gross misstatement of the available evidence.

Courts in this Circuit have established that an IRS Form 1099-MISC falls within the meaning of "information return" and that if an employer "kn[ows] that it [i]s incorrectly classifying workers as independent contractors rather than employees and knowingly issuing these workers 1099-MISC's incorrectly. . . . [a] factfinder could conclude based on this evidence that the 1099-MISC's . . . were fraudulent."[8]

"Courts have interpreted the term 'willfully' as requiring 'proof of deceitfulness or bad faith in connection with filing an information return.' "[9] "Direct proof of

---

[6] *Id.*
[7] Dkt. 77 at 9.
[8] *Seijo v. Casa Salsa, Inc.*, 2013 U.S. Dist. LEXIS 167205, *24, 2013 WL 6184969 (S.D. Fla. Nov. 25, 2013) (*followed by Leon v. Tapas & Tintos, Inc.*, 51 F. Supp. 3d 1290, 1297, 2014 U.S. Dist. LEXIS 143270, *16 (S.D. Fla. 2014); *Angelopoulos v. Keystone Orthopedic Specialists, S.C., Wachn, LLC*, 2014 U.S. Dist. LEXIS 8744, *19, 2014 WL 292578 (N.D. Ill. Jan. 23, 2014)).
[9] *Seijo*, 2013 U.S. Dist. LEXIS 167205, *25; *see also Cavoto v. Hayes*, 2010 U.S. Dist. LEXIS 66017, 2010 WL 2679973 at *4 (N.D. Ill. July 1, 2010); *Pitcher v. Waldman*, 2012 U.S. Dist. LEXIS 152087, *26, 110 A.F.T.R.2d (RIA) 6437, 2012 WL 5269060 (S.D. Ohio 2012).

4

actual fraud is often very difficult to establish."[10] Direct evidence of fraud does not always exist, so courts also allow fraudulent intent to be proven through circumstantial evidence and the surrounding circumstances of the allegedly fraudulent transactions."[11]

In this case, ample circumstantial evidence exists that 1715 acted in bad faith when it filed IRS Forms 1099-MISC and thus misclassified Plaintiff's earnings as "nonemployee compensation."[12] First, Defendant Jones—as CEO of 1715's successor entity—was put on notice that the U.S. Department of Labor's Wage & Hour Division had determined that the Club's dancers were employees rather than independent contractors.[13] Moreover, 1715 admits that it made no attempt to seek legal advice as to its obligations to Dean or other dancers under the FLSA.[14] Finally, Defendants also issued an IRS Forms 1099 to Vickie Mayes, who was a waitresses and bartender, and who was indisputably an employee rather than an independent contractor.[15] If there has ever been circumstantial evidence of bad faith, it must be 1715's complete disregard for its legal obligations to its employees after Wage & Hour's determination.

---

[10] *Development Specialists, Inc. v. Hamilton Bank, N.A. (In re Model Imperial, Inc.)*, 250 B.R. 776, 2000 Bankr. LEXIS 726, 13 Fla. L. Weekly Fed. B 266 (Bankr. S.D. Fla. 2000).
[11] *Dionne v. Keating (In re XYZ Options, Inc.)*, 154 F.3d 1262, 1271 (11th Cir. 1998).
[12] Plaintiff's Statement of Additional Material Facts (hereinafter "P's SAMF"), ¶ 42.
[13] P's SAMF, ¶¶ 1, 30–31.
[14] P's SAMF, ¶¶ 9, 27–28.
[15] P's SAMF ¶ 43.

Defendants are also incorrect in asserting that "Plaintiff's status as an employee depends on the economic realities test . . . ."[16] Misclassification of an employee as an independent contractor in the context of IRS filings is governed by common law concepts.[17] The IRS has provided the common law factors in its IRS Form 22-8 (Determination of Worker Status for Purposes of Federal Employment Taxes and Income Tax Withholding).[18]

Defendants have failed to meet their burden on summary judgment to prove that Plaintiff § 7434 claim must necessarily fail. 1715 was on notice that the FLSA did not permit its independent contractor classification. This is sufficient to show a question of material fact as to its intent.

Finally, Defendants are incorrect that Popovitch and A-1 can have no liability under § 7434 because they had no role in the filing of any of the IRS Forms 1099. As originally pleaded in Ms. Dean's Complaint, she worked as a dancer at the Club from 2010 through August 2014, and Defendants filed IRS Forms 1099 misclassifying her as an independent contractor for each of those years.[19] In 2015, it was A-1 that issued Dean a 1099 misclassifying her 2014 earnings as nonemployee compensation.[20] Popovitch was the only member of A-1 and the only

---

[16] Dkt. 77 at 9.
[17] *See, e.g., Texas Carbonate Co. v. Phinney*, 307 F.2d 289, 292, 1962 U.S. App. LEXIS 4322, *7-8 (5th Cir. Tex. 1962) (citations omitted).
[18] https://www.irs.gov/pub/irs-pdf/fss8.pdf; *see also* https://www.irs.gov/Businesses/Small-Businesses-&-Self-Employed/Independent-Contractor-Self-Employed-or-Employee.
[19] Dkt. 1 at ¶¶ 13, 41.
[20] P's SAMF, ¶ 42.

individual with the authority to make decisions on the company's behalf, including its treatment of workers as employees or independent contractors.[21] Defendants' argument that Popovitch and A-1 could not be responsible for the decision to fraudulently treat Dean as an independent contractor for tax purposes thus ignores the actual chronology of events.

### C.    Plaintiff's Claims Do Not Rely on a Theory of Successor Liability

Defendants argue that Plaintiff's claims must fail as to all Defendants, "at least for any liabilities arising before the sale in December 2013,"[22] because the ownership of the Club changed in December 2013 and none are liable as successor entities. Dean's claims do not, however, rely on a theory of successor liability. Rather, Plaintiff asserts that 1715 is liable for its own FLSA violations both before and after it was acquired by A-1. A-1 is liable for all of 1715's violations because, together with 1715, it forms a single "entity" within the meaning of the FLSA.[23] Popovitch is personally liable as an individual employer for her own violations of the FLSA, all of which occurred beginning in December 2013.[24]

A-1's purchase of 1715 in December 2013 was an acquisition of the entire company though a stock purchase—not an assets-only acquisition.[25] Thus, 1715 remained and remains an operating corporate entity. Its liability for previous FLSA

---

[21] P's SAMF, ¶¶ 7, 14–17, 29.
[22] Dkt. 77 at 14.
[23] *See* Dkt. 92-1 (Brief in Support of Plaintiff's Motion for Partial Summary Judgment), 11–13.
[24] *See* Dkt. 92-1 at 21–24.
[25] P's SMF, ¶ 8.

violations did not change after its sale to A-1 simply because the corporate entity changed hands.

Since A-1 acquired 1715, the two companies have functioned as an "enterprise" within the meaning of the FLSA. The FLSA defines the term "enterprise" as

> the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units . . . .[26]

In *Reich v. Priba Corp.*, the Fifth Circuit found that two companies that jointly operated a gentlemen's club constituted a single enterprise within the meaning of the FLSA.[27] The court based its conclusion on the fact that the two companies performed related activities (holding the club's liquor license and holding the club's adult entertainment license, respectively), that they had common control (the same corporate officers), and for a common business purpose (i.e., adult entertainment), held themselves out to public under a common name (the club name), and shared office space.[28] In a nearly identical case, *Donovan v. Executive Towers, Inc.*, the Fourth Circuit reached the same conclusion.[29]

---

[26] 29 U.S.C. § 203(r)(1).
[27] 890 F Supp. 586 (N.D. Tex. 1995).
[28] *Id.*
[29] 791 F.2d 925 (4th Cir. 1986) (two companies were a single enterprise where one operated a strip club and the other operated an adult bookstore, because they had a common business purpose, one person was majority shareholder in both companies, both were located on the same block, both used certain employees interchangeably, and both employed single record keeper.).

8

The present case is not distinguishable from *Priba* or *Executive Towers*, except that the common control and joint operation is *even clearer* here. 1715 and A-1 are the exact same thing: they're both completely controlled by Carmen Popovitch—who is the sole member of A-1[30]—and A-1 has no business function other than owning 1715.[31] The Club has paid its employees on both 1715 and A-1 checks,[32] and A-1 issued Ms. Dean a 1099 for 2014.[33] Most astonishingly, Popovitch, as 30(b)(6) designee for 1715, could not even identify which company she believed Dean had an independent contractor agreement with.[34]

Defendant Popovitch is not personally liable for the FLSA violations of 1715 that occurred prior to her involvement in the operation of the Club. Her liability as an FLSA employer began to accrue when her involvement began (i.e., in December 2013) and is completely unaffected by the successor liability of the corporate defendant. As shown in Plaintiff's Motion for Summary Judgment, Popovitch was clearly an "employer" within the meaning of the FLSA for the entire relevant period beginning in December 2013.[35]

---

[30] P's SAMF, ¶ 7.
[31] P's SAMF, ¶ 44.
[32] P's SAMF, ¶¶ 24–25
[33] P's SAMF, ¶ 42.
[34] P's SAMF, ¶ 13.
[35] Dkt. 92-1 at 21–24.

### D.   Defendant 1715 is Not Entitled to Summary Judgment on Its Affirmative Defense of Good Faith

Defendants argue that their affirmative defense of good faith bars recovery of liquidated damages and mandates a two-year statute of limitations, and that their reliance on a Department of Labor administrative determination requires dismissal of Plaintiff's FLSA claims altogether.[36] These arguments have no basis in law or fact.

The FLSA provides that

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.[37]

A prevailing FSLA plaintiff is entitled to liquidated damages under § 216(b). The Court has *discretion* under § 260 to award no liquidated damages if the employer can demonstrate its "good faith":

> In any action . . . to recover unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938 . . . ., if the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the Fair Labor Standards Act of 1983 . . ., the court may, in its sound discretion, award no liquidated damages or

---

[36] Dkt. 77 at 20.
[37] 29 U.S.C. § 216(b)

award any amount thereof not to exceed the amount specified in section 216 of this title.'[38]

"What constitutes good faith on the part of [an employer] and whether [the employer] had reasonable ground for believing that [its] act or omission was not a violation of the [Act] are mixed questions of fact and law."[39] Those factors tending to show good faith are set forth in 29 C.F.R. § 790.13 et seq.

As Magistrate Judge Scofield stated in *Smith v. Wynfield Dev. Co.*,

> The determination of whether an employer acted in good faith and had reasonable grounds for believing its act or omission was not a violation of the FLSA has both a subjective and objective component. *Dybach v. Florida Dep't of Corrections*, 942 F.2d 1562, 1566 (11th Cir. 1991). Subjective good faith means the employer has **an honest intention to ascertain what the FLSA requires and to act in accordance** with it. *Id*. Objective good faith means the employer had *reasonable grounds for believing its conduct comported with the FLSA. Id*. In addition, "[g]ood faith requires **some duty to investigate potential liability** under FLSA." *Barcellona v. Tiffany English Pub, Inc*., 597 F.2d 464, 469 (5th Cir. 1979). An employer who knew or had reason to know that the FLSA applied cannot establish good faith as a defense. *Reeves v. International Tel. & Tel. Corp.,* 616 F.2d 1342, 1352-53 (5th Cir. 1980).[40]

Additionally, the FLSA also provides a complete release from liability where a Defendant "pleads and proves" that its violation was done "***in good faith in conformity with and in reliance on*** any written administrative regulation, order,

---

[38] 29 U.S.C. § 260.
[39] 29 C.F.R. § 790.22(c)
[40] 451 F. Supp. 2d 1327, 1337 (N.D. Ga. 2006) (Report and Recommendation adopted by Judge Thrash).

11

ruling, approval, or interpretation, of [the Wage and Hour Division]. . . ."[41] The Code of Federal Regulations explains in detail what is required for an employer to make use of this very limited defense:

> ***The "good faith" defense is not available to an employer unless the acts or omissions complained of were "in conformity with"*** the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy upon which he relied. This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it; actual conformity is necessary.[42]
>
> . . . The legislative history of the Portal Act makes it clear that the employer's "good faith" is not to be determined merely from the actual state of his mind. . . . "good faith" also depends upon an objective test—whether the employer . . . acted as a reasonably prudent man would have acted under the same or similar circumstances. "Good faith" requires that the employer have ***honesty of intention and no knowledge of circumstances which ought to put him upon inquiry***.[43]
>
> In addition to acting (or omitting to act) in good faith and in conformity with an administrative regulation, order, ruling, approval, interpretation, enforcement policy or practice, the employer must also prove that he ***actually relied upon it***.[44]

In this case, Defendants offered no evidence that they acted in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of the Wage and Hour Division. Defendants admit that they never sought any opinion or

---

[41] 29 USCS § 259(a) (emphasis added).
[42] 29 C.F.F. § 790.14(a) (emphasis dodded).
[43] 29 C.F.R. § 790.15(a) (emphasis added).
[44] 29 C.F.R. § 790.16(a) (emphasis added).

legal advice as to their wage obligations to the Club's dancers.[45] Popovitch claims she merely read DOJ fact sheets and independently decided that Dean was an independent contractor who "should not [be] compensate[d] in any way."[46]

Defendants' Motion is wholly dependent on their argument that they acted in reliance on a Wage & Hour recommendations made to 1715's predecessor entity in the early 1990's. But 1715, A-1, and Popovitch have provided no evidence that they were even aware that the Wage & Hour correspondence existed during Dean's employment. And if 1715 did act in reliance on Wage & Hour's determinations prior to the December 2013 purchase, Defendants have produced absolutely no evidence of such reliance. In fact, it was Plaintiff's counsel who provided the documents related to the Wage & Hour audit to Defendants.[47] Moreover, Defendants have *admitted* that they never sought any advice from Wage & Hour,[48] and they must be bound by that admission.

Most importantly, however, Defendants actions were not even in conformity with the Wage & Hour plan they now seek to rely on. Wage & Hour's audit of 1400 Northside Drive, Inc. determined that its dancers were employees, rather than independent contractors, and thus "due the minimum wage and overtime."[49] As part of a settlement with Wage & Hour, 1400 agreed to pay its dancers in

---

[45] P's SAMF, ¶¶ 9, 27–28.
[46] P's SAMF, ¶ 29.
[47] P's SAMF, ¶¶ 32–33.
[48] P's SAMF, ¶ 27.
[49] P's SAMF, ¶ 31.

accordance with the FLSA's requirements for employees.[50] The approved plan consisted of a system of envelopes that each dancer would complete daily, withholding tables recording reported all fees and tips, payroll reports showing all hours worked and compensation received and to be given to dancers on a semi-weekly basis, and even reimbursement for adult entertainment permits.[51]

None of this occurred during Plaintiff Dean's employment. Defendants treated Dean as an independent contract, not as an employee.[52] They did not directly pay Dean any monies, they did not track her hours worked, and they did not track her tips received.[53] Because Defendants did not act in conformity with the plan laid out by Wage & Hour, their claim of good faith reliance fails as a matter of law.[54]

### E. Defendant Popovitch is Not Entitled to Summary Judgment on the Question of Liability as an Individual Employer

Defendants correctly cite *Alvarez Perez v. Sanford-Orlando Kennel Club*, *Inc.* for the rule that "in order to qualify as an employer [under the FLSA], an officer 'must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.' "[55] Defendants' argument addresses only the question of whether Defendant Popovitch exercised "significant

---

[50] P's SAMF, ¶¶ 34–38.
[51] P's SAMF, ¶¶ 34–38.
[52] P's SAMF, ¶ 11.
[53] P's SAMF, ¶¶ 18–22.
[54] *See* 29 C.F.F. § 790.14(a).
[55] *Alvarez Perez v. Sanford-Orlando Kennel Club*, Inc., 515 F. 3d 1150, 1160–61 (11th Cir. 2008) (quoting *Patel v. Wargo,* 803 F.2d 632, 637–38 (11th Cir. 1986)).

control over Plaintiff," and not whether Popovitch was involved in the day-to-day operation of the Club.

As Plaintiff showed in detail in her own Motion for Summary Judgment, Popovitch was deeply involved in the operation of the nightclub.[56] But Defendants have failed address this issue. Because Defendants have failed to affirmatively show that there is no disputed issue of fact as to Popovitch's status as an individual employer, Plaintiff has no obligation now to bring forth evidence and rebut arguments not even raised.[57]

### F. Defendants are Not Entitled to Summary Judgment on their Breach of Contract Counterclaim

As a preliminary matter, Popovitch has no standing to assert any of Defendants' three counterclaims. In fact, she that she has no personal knowledge of the agreement between the Club and Dean.[58] There is no evidence in the record that Popovitch had any agreement with Dean and thus she lacks standing to bring any of the three counterclaims asserted.

Defendants' breach of contract counterclaim is premised on the theory that Dean agreed to be an independent contractor and that, "[b]y demanding compensation inconsistent with the independent contractor agreement, Plaintiff has breached and repudiated the contract."[59]

---

[56] Dkt. 92-1, 21–24.
[57] *See Clark*, 929 F.2d 604; *Impossible Elecs. Techniques, Inc.*, 669 F.2d at 1031.
[58] P's SAMF, ¶ 13.
[59] Dkt. 21, pg. 16.

This counterclaim must fail because it seeks damages arising from an agreement that purported to nullify the purposes of the FLSA. Neither an employee nor an employer can effectively waive or contractually abridge any of the provisions of the Fair Labor Standards Act.[60] Thus, even if Dean entered into an agreement whereby she would work as an independent contractor, this Court cannot enforce such a contract.

Insofar as Defendants' quantum meruit counterclaim could be interpreted as a claim for setoff, that argument too would fail. Plaintiff has acknowledged that her tips were in excess of the federal minimum wage during each workweek. If this Court found those amounts to be service charges rather than tips, there would admittedly be no FLSA violation. However, the facts of this case do not permit the conclusion that Dean received service charges.

"[A]t minimum, for a fee to constitute a "service charge," it must be (1) recorded in a company's gross receipts, and (2) distributed by the company to the employee."[61] As Plaintiff showed extensively in her own Motion for Summary Judgment, Defendants did not even record the amounts of money that Dean received, other than some VIP tips that were paid via credit card.[62] This is ultimately beside the point, however, because Defendants have failed to cite to

---

[60] *Lee v. Flightsafety Servs. Corp.*, 20 F.3d 428, 432 (11th Cir. 1994).
[61] *Henderson v. 1400 Northside Drive, Inc.*, 2015 U.S. Dist. LEXIS 79644 (N.D. Ga. June 19, 2015) (Thrash, J.).
[62] Dkt. 92-1, 5; P's SAMF, ¶¶ 20–22.

evidence showing that they treated those monies as service charges. Their argument must, therefore, fail as a matter of law.[63]

## IV. CONCLUSION

For the reasons hereinbefore set out, Plaintiff prays that the Court deny Defendants' Motion for Summary Judgment.

Respectfully submitted,

**DELONG, CALDWELL, BRIDGERS, FITZPATRICK & BENJAMIN, LLC**

3100 Centennial Tower
101 Marietta Street
Atlanta, GA 30303
(404) 979-3150
(404) 979-3170 (facsimile)
charlesbridgers@dcbflegal.com
kevin.fitzpatrick@dcbflegal.com
matthew.herrington@dcbflegal.com

*/s/Charles R. Bridgers*
Charles R. Bridgers
Georgia Bar No. 080791

*/s/ Kevin D. Fitzpatrick*
Kevin D. Fitzpatrick, Jr.
Georgia Bar No. 262375

*/s/ Matthew W. Herrington*
Matthew W. Herrington
Georgia Bar No. 275411

Counsel for Plaintiff

---

[63] *See Clark*, 929 F.2d 604; *Impossible Elecs. Techniques, Inc.*, 669 F.2d at 1031.

### CERTIFICATION OF COMPLIANCE

I certify pursuant to Local Rule 7.1(D) that this motion was prepared in Times New Roman, 14 point font, in compliance with LR 5.1(C) NDGa.

>                               */s/ Matthew W. Herrington*
>                               Matthew W. Herrington
>                               Georgia Bar No. 275411